IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED-CLERK
U.S. DISTRICT COURT

05 SEP 29 PM 2:01

TEXAS-EASTERN

BY _____

| | | |
|---|---|---|
| **KHRISTIAN OLIVER,** | § | |
| Petitioner, | § | |
| vs. | § | No. 1:04cv041 |
| | § | |
| **DOUG DRETKE, Director,** | | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | | |
| | § | |
| Respondent. | | |

### MEMORANDUM OPINION

Khristian Oliver ("Oliver"), an inmate confined to the Texas Department of Criminal Justice, Institutional Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Oliver challenged his capital murder conviction and death sentence imposed by the 145th Judicial District Court of Nagcodoches County, Texas in cause No. 27,037, styled *The State of Texas vs. Khristian Oliver.*   Respondent Doug Dretke ("the Director") has filed a motion for summary judgment.  For the reasons set forth below, judgment will  be granted as to eighteen of Oliver's claims, but that further review is warranted as to claims thirteen and fourteen, so judgment as to these two claims will not be granted at this time.

### I. Background Facts

Oliver began a  crime spree  about a year and half before the incident which resulted in his conviction in this case.   There were over a dozen burglaries and many of them involved the use of weapons. On March 17, 1998, Oliver,  his girlfriend Sonya Reed, Bennie Rubalcaba (age 16) and his brother, Lonny Rubalcaba (age 15), stopped at the house of the victim, Joe Collins, in rural

1

Nagcodoches County. Oliver and Lonny Rubalcaba went to burglarize the house, carrying Oliver's .380 caliber pistol, a handful of bullets and bolt cutters. Reed and Bennie Rubalcaba stayed in the truck. While the two were in the house, Collins came home. Collins shot Lonny Rubalcaba in the leg as he and Oliver were trying to escape. Oliver then shot Collins five times. At least two of the shots were fired while the victim lay on his back on the ground outside his house. As Bennie Rubalcaba helped his brother Lonny back to the truck he turned and saw Oliver striking Collins several times in the head with a rifle butt, while Collins was lying on the ground. Collins's skull was severely fractured and his face was disfigured nearly beyond recognition.

0Oliver then joined the group in the truck. The group took Lonny Rubalcaba to the hospital and went to the Sheriff's office and filed reports saying that someone had driven by and shot Lonny while they were all at a farm. The next day, deputies picked up Bennie Rubalcaba and questioned him. Bennie then gave a written statement admitting what had actually happened. That same morning, police questioned Lonny Rubalcaba, who, after originally repeating the story about the farm, gave a second written statement coinciding with his brother's second statement. Police located Oliver and Reed at a Houston motel and arrested them.

## II. Procedural history

Oliver was indicted for capital murder, the killing of Collins having taken place during the commission of a burglary. He was tried and found guilty in April 1999, and after a punishment determination hearing, he was sentenced to death. His conviction and sentence were affirmed on direct appeal by the Texas Court of Criminal Appeals, *Oliver v. State*, No. 73,837, slip op. (Tex. Crim. App. April 17, 2002) (unpublished). The Supreme Court of the United States denied his petition for a writ of *certiorari. Oliver v. Texas* , 537 U.S. 1161 (2003). His petition for post

2

conviction relief was denied by the Court of Criminal Appeals on October 20, 2002, and his petition

for a writ of *certiorari* was also denied. *Oliver v. Texas*, 538 U.S. 1001 (2003).

On January 21, 2004, Oliver filed the present application for a writ of *habeas corpus*. On

October 14, 2004, the Director moved for summary judgment as to all of the claims in the petition.

### III. Claims

Oliver raised twenty claims in his application. These are summarized as follows:

1. The state court's failure to provide an evidentiary hearing in Oliver's post-conviction proceedings denied him due process of law and also failed to satisfy the requirements of "adjudication" and "determination" of claims under 28 U.S.C. § 2254.

2. The state court's failure to provide an evidentiary hearing in Oliver's post-conviction proceedings denied Oliver the heightened reliability required in adjudication of capital cases under the Eighth Amendment of the United States Constitution.

3. The state court's refusal to consider Oliver's late-filed amendment to his post-conviction petition denied him due process of law and also violated Texas state law.

4. The trial court's refusal to question the jury venire about racial bias denied Oliver a fair and impartial jury.

5. The Rubalcaba brothers' communicating and coordinating their testimony at the urging of the State and after the rule was invoked, denied Oliver due process of law.

6. The Rubalcaba brothers' communicating about and coordinating their testimony, after the rule was invoked, denied Oliver the right of confrontation.

7. The Rubalcaba brothers' communicating about their testimony, after the rule was invoked, denied Oliver the heightened reliability required in adjudication of capital cases.

8. The Rubalcaba brothers' communicating about their testimony, after the rule was invoked, denied Oliver the effective assistance of counsel.

9. The trial court's denying Oliver's proffered instruction on the lesser included offense of felony murder subjected him to cruel and unusual punishment and denied him due process of law.

3

10. The trial court's failure to instruct the jury that the State had the burden of proving beyond a reasonable doubt the absence of sufficient mitigation denied Oliver due process of law.

11. The trial court's confusing instruction to the jury on the issue of mitigation denied Oliver the heightened reliability required in adjudication of capital cases.

12. Defense counsel's not having the opportunity to question the jury about the State's burden of proof on the mitigation issue denied Oliver due process of law.

13. The petitioner's right to an impartial jury under U.S. CONST. amend. VI was denied when jurors consulted Biblical scripture which called for death as the punishment for murder.

14. The Petitioner's right to a punishment determination based upon discretion carefully guided by law, under U.S. CONST. amend. VIII, was denied when jurors consulted Biblical scripture which called for death as the punishment for murder.

15. The trial court's refusal to instruct the jury that Oliver would not be eligible for parole for 40 years if he were given a life sentence subjected him to cruel and unusual punishment.

16. The trial court's refusal to instruct the jury that Oliver would not be eligible for parole for 40 years if he were given a life sentence denied him due process of law.

17. The trial court's failure to instruct the jury that a less than unanimous vote on the special punishment issue would result in a life sentence denied Oliver the heightened reliability required in adjudication of capital cases.

18. The trial court's failure to instruct the jury that a less than unanimous vote on the special punishment issue would result in a life sentence denied Oliver the right to a jury trial.

19. The trial court's failure to instruct the jury that a less than unanimous vote on the special punishment issue would result in a life sentence denied Oliver due process of law.

20. Oliver's trial counsel's failure to investigate mitigating evidence constituted ineffective assistance.

## IV. Standard of review

28 U.S.C. § 2254 (d) provides that relief in *habeas corpus* may not be granted with respect

to any claim which was adjudicated on the merits in State court proceedings unless the adjudication

of the claim resulted in a decision that was either (1) contrary to, or an unreasonable application of,

4

clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Pure questions of law and mixed questions of law and fact are reviewed under § 2254 (d)(1), while pure questions of fact are reviewed under § 2254 (d)(2). *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001). Claims fairly presented to the state courts but not adjudicated on the merits will are reviewed *de novo*.

28 U.S.C. §2254 (b) generally prohibits granting relief on claims not previously presented to the state courts. If a federal application contains any such claims, the Court will attempt to allow the applicant to return to state court and present them to the state court in a successive petition, either by dismissing the entire petition without prejudice, *see Rose v. Lundy*, 455 U.S. 509, 520-22 (1982), or by staying the federal proceedings on the exhausted claims. *See Rhines v. Weber*, --- U.S.----, 125 S. Ct. 1528, 1534 (2005).

If the federal court is convinced that the state court would refuse to consider the merits of such a successive petition, however, the federal court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The Court does not review such procedurally defaulted claims unless the applicant can establish either that he had good cause for failing to fairly present his claims, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the Court's failing to address the claims would result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001). If it is not entirely clear that the state court would refuse to hear a successive petition

5

containing the new claims, the federal court will allow the state court the first opportunity to consider them. *See Wilder v. Cockrell,* 274 F.3d 255, 262-63 (5th Cir. 2001).

**V. Analysis**

1. Oliver's first claim is that he was denied the due process of law by the state court's failure to provide an evidentiary hearing in his post-conviction proceedings. "[I]nfirmities in state *habeas* proceedings do not constitute grounds for federal *habeas* relief," *see Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003), *cert. denied*, 540 U.S. 1163 (2004). This part of Oliver's first claim must fail. Oliver also contends that the state court's failure to grant an evidentiary hearing means that its decision is not the full and fair adjudication or determination required to trigger the standard of review set forth in 28 U.S.C. § 2254. There is no "trigger" provision in 28 U.S.C. § 2254. The state courts findings of fact are presumed to be correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e); *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). The Court will grant the Director's motion for summary judgment as to Oliver's first claim.

2. Oliver's second claim is that the state court's failure to grant an evidentiary hearing denied him the heightened reliability required in the adjudication of capital proceedings. As explained in the analysis of the previous claim, infirmities in state *habeas* proceedings do not constitute grounds for federal *habeas* relief. The Court will grant the Director's motion for summary judgment as to this claim.

3. Oliver's third claim is that the state court's refusal to consider his late filed amendment to his petition for post-conviction relief denied him due process of law and violated Texas state law. As explained in the analysis of Oliver's first claim, infirmities in state *habeas* proceedings do not

6

constitute grounds for federal *habeas* relief. The Court will grant the Director's motion for summary judgment as to Oliver's third claim.

4. Oliver's fourth claim is that the trial Court's refusal to question the jury venire about racial bias denied him a fair and impartial jury. Because this claim was rejected on the merits by the state court on direct appeal, and involves a pure question of law, the question for the Court is whether the state court's adjudication of the claim was either contrary to, or based upon an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

In *Turner v. Murray*, 476 U.S. 28, 36-37 (1986), the Supreme Court of the United States reversed the conviction of a defendant whose request that the judge *voir dire* the jury about racial bias was denied. The state court in the present case distinguished *Turner* on the grounds that under Virginia law, the trial judge has the sole responsibility for conducting the *voir dire* examination, while under Texas law, Oliver's defense counsel was free to question the jurors about racial bias. In denying Oliver's claim, the state court interpreted *Turner* as establishing the right to question the jurors about racial bias, but not the right to have the judge do the questioning. In light of the difference between Virginia and Texas *voir dire* procedure, the Court finds that the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court in *Turner*. The Court will grant the Director's motion for summary judgment as to Oliver's fourth claim.

5. Oliver's fifth claim is that the Rubalcaba brothers' communicating about and coordinating their testimony, after the rule was invoked, denied him due process of law.

Because this claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of fact, the question for the Court is whether the state court's adjudication

7

of the claim was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

At trial, the Rubalcaba brothers testified under oath that they were not asked by the prosecutor to give consistent testimony and they did not coordinate their testimony in an attempt to be consistent. During Oliver's state post-conviction proceedings, however, he produced affidavits from the Rubalcaba brothers recanting their trial testimony. In these affidavits, the brothers testified that they were asked by the prosecutors to give consistent testimony, and that their mother acted as a go between, informing one brother about what the other intended to say in order to allow them to coordinate their testimony. The other evidence in the state proceedings consisted of affidavits by the prosecutors that at no time did they ask the brothers to coordinate their testimony. The judge credited the affidavits of the prosecutors over the affidavits of the brothers.

Ordinarily, the state judge should have conducted an evidentiary hearing when faced with contradicting affidavits. Affidavits which involve a recantation of a witness' own trial testimony, however, are viewed with extreme suspicion, *see United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992), and no additional evidence was presented to corroborate the brothers' recantations. Under these circumstances, the Court finds that it was not unreasonable for the state court to credit the prosecutors' affidavits over the brothers' affidavits. Because the state court's adjudication of this claim was not based upon an unreasonable determination of the facts in light of the evidence presented in the state proceedings, the Court will grant the Director's motion for summary judgment as to Oliver's fifth claim.

6. Oliver's sixth claim was that the Rubalcaba brothers' alleged communication about, and alleged coordination of, their testimony, after the rule was invoked, denied Oliver the right of

8

confrontation. This claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of fact. The question for this Court is whether the state court's adjudication of the claim was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. In its analysis of the previous claim the Court explained that the state court's finding that the Rubalcaba brothers did not coordinate their testimony was not an unreasonable determination of the facts in light of the evidence presented in the state proceedings. The Court will therefore grant the Director's motion for summary judgment as to Oliver's sixth claim.

7. Oliver's seventh claim is that the Rubalcaba brothers' alleged communication about their testimony, after the rule was invoked, denied Oliver the heightened reliability required in the adjudication of capital cases. Because this claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of fact, the question for the Court is whether the state court's adjudication of the claim was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As previously stated, the state court's finding that the Rubalcaba brothers did not coordinate their testimony was not an unreasonable determination of the facts in light of the evidence presented in the state proceedings. The Court will therefore grant the Director's motion for summary judgment as to Oliver's seventh claim.

8. Oliver's eighth claim is that the Rubalcaba brothers' alleged communication about their testimony, after the rule was invoked, denied Oliver the effective assistance of counsel. Because his claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of fact, the question for the Court is whether the state court's adjudication of the claim was

9

based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Again, the state court's finding that the Rubalcaba brothers did not coordinate their testimony was not an unreasonable determination of the facts in light of the evidence presented in the state proceedings. The Court will therefore grant the Director's motion for summary judgment as to Oliver's eighth claim

9. Oliver's ninth claim is that the trial court's denial of Oliver's proffered instruction on the lesser included offense of felony murder subjected him to cruel and unusual punishment and denied him due process of law. Because this claim was rejected on the merits by the state court on direct appeal, and involves a mixed question of law and fact, the question for the Court is whether the state court's adjudication of the claim was contrary to, or based upon an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court of the United States held that a capital murder defendant is entitled to an instruction on the lesser included offense of felony murder if evidence in the record would have supported the instruction. Under Texas law, the difference between capital murder and felony murder is that capital murder requires the intent to cause death and felony murder does not. *See Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 919 (1993). Oliver argues that the evidence established that he tried to burglarize the house while the victim was not home, and tried to leave when the victim unexpectedly came home, but was trapped; that the victim shot Lonny Rubalcaba first, and at that point he (Oliver) shot the victim in order to protect himself and Rubalcaba.

The state court found that Oliver was not entitled to instructions on self-defense, defense of a third person, or the right to continue shooting in a defensive situation; and the fact that Oliver shot

10

the victim several times and beat him about the head and face with a rifle butt after shooting him supported the proposition that a reasonable jury could not have found that Oliver lacked the necessary intent or knowledge required for murder, and somehow acted recklessly. Accordingly, while the evidence in the record may have supported an instruction on self-defense, it did not support an instruction on felony murder. The Court agrees with this reasoning, and accordingly finds that the state court's adjudication of this claim was not based upon an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in *Beck*. The Court will grant the Director's motion for summary judgment as to Oliver's ninth claim.

10. Oliver's tenth claim is that the trial court's failure to instruct the jury that the State had the burden of proving beyond a reasonable doubt the absence of mitigating circumstances denied him due process of law. Because this claim was rejected on the merits by the state court on direct appeal, and involves a pure question of law, the question for the Court is whether the     state court's adjudication of the claim was contrary to, or based upon an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court of the United States held: "[o]ther than the fact of a prior conviction, any fact that *increases* the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added). Oliver contends that because the absence of mitigating circumstances is a fact which increases the penalty for capital murder from life imprisonment to death, *Apprendi* requires the standard of proof to be beyond a reasonable doubt. The state court rejected this claim on the grounds that the death penalty is not beyond the statutory maximum punishment for capital murder

11

under Texas law.  Oliver contends that the Supreme Court of the United States later rejected that reasoning in *Ring v. Arizona*, 536 U.S. 584 (2002).

Oliver's reasoning turns *Apprendi* on its head.  Mitigation is not a factor that potentially increases a penalty.  It can only decrease it.  In *Rowell v. Dretke*, 398 F.3d 370, 78 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit held that *Apprendi* and *Ring* did not require juries in Texas capital murder cases to find the absence of mitigating circumstances beyond a reasonable doubt.  Accordingly, rejection of Oliver's claim was neither contrary to, nor based upon an unreasonable interpretation of, clearly established federal law, as determined by the Supreme Court of the United States in *Apprendi*.  The Court will grant the Director's motion for summary judgment as to Oliver's tenth claim.

11.  Oliver's eleventh claim is that the trial court's instruction to the jury on the issue of mitigation denied Oliver the heightened reliability required in the adjudication of capital cases.  Because this claim was rejected on the merits by the state court on post-judgment review, and involves a pure question of law, the question for the Court is whether the state court's adjudication of the claim was contrary to, or based upon an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In 1989, jurors in Texas deciding whether to impose capital punishment were required to answer three special issues: 1) whether the defendant's conduct was committed deliberately and with the reasonable expectation that death would result; 2) whether it was probable that the defendant would be a continuing threat to society; and 3) whether the killing was unreasonable in response to any provocation by the victim.  In *Penry v. Lynaugh*, 492 U.S. 302 ("Penry I"), the Supreme Court of the United States held under this system jurors could use a defendant's mental retardation to help

12

establish one or more of these special issues, but they could not meaningfully consider it to mitigate against a death sentence.   The Texas Legislature then amended the system: jurors were instructed that if, after they found the three statutory special issues they nevertheless found sufficient mitigating evidence to believe that his life should nevertheless be spared, they should change their answer to one of the special issues from "yes" to "no," even though they would know that the new answer was incorrect.   In *Penry v. Johnson*, 532 U.S. 782 (2001), ("*Penry II*"), the Supreme Court of the United States held this amended system unconstitutional, on the grounds that the instruction was too confusing.

After the Texas Legislature again modified the State's capital punishment determination procedures, the procedures in place during Oliver's trial required the jury to answer the mitigation question entirely separate from the special issues.   In other words, if the jury answers the special issues in the affirmative, it then considers whether, in light of the mitigating evidence presented, the defendant's life should nevertheless be spared.   Oliver was sentenced to death because the jury in his case answered the special issues in the affirmative and the mitigation issue in the negative.

Oliver contends that because the mitigation instruction does not specify what constitutes "sufficient" mitigation to justify sparing a life, and does not provide a standard of proof for the mitigation issue, it still sends "mixed signals" to the jury, in violation of *Penry II*. [1]    As explained above, however, that case dealt with jurors being instructed to give contradictory answers; the issue Oliver raises involves not ambiguity that results from contradictory instructions, but rather vagueness

---

[1] The "mixed signals" concept Oliver relies upon actually comes from *Penry I*.   In that case, the Court recognized that a mentally retarded offender might be considered more likely to be dangerous in the future because of his inability to learn from his conduct, while at the same time less morally responsible for his criminal conduct because of his inability to consider other alternatives.   The fact that an offender was mentally retarded would therefore send mixed signals ( both aggravating and mitigating) to a juror.

within an instruction.  To establish that the lack of a standard of proof in a jury instruction about

mitigation is constitutionally impermissible requires Supreme Court authority more specific on the

issue of vagueness than either *Penry I or Penry II*.  The Court therefore finds that the state court's

rejection of Oliver's claim was neither contrary to, nor based upon an unreasonable application of,

those two precedents.  The   Director's motion for summary judgment is granted as to Oliver's

eleventh claim.

12. Oliver's twelfth claim is that his defense counsel did not have the opportunity to question

the jury about the State's burden of proof on the mitigation issue, which denied him due process of

law.  On post-conviction review, the state court found *inter alia*, that because Oliver filed a motion

requesting the opportunity to question the jury on this issue, but then withdrew the motion and did

not ask again, he waived his right to review.  If the state court refuses to review the merits of a claim

based upon the defendants failure to preserve the issue for appeal, a federal court may not review the

merits of the claim unless the applicant can establish either that he had good cause for failing to

preserve the error, and he would be prejudiced by not being given an opportunity to do so in the

federal court, or that the Court's failing to address the claim would result in a fundamental

miscarriage of justice.  *See Young v. Herring*, 938 F.2d 543, 548 (5th Cir. 1991), *cert. denied*, 503

U.S. 940 (1992).

Oliver contends that he had good cause for not raising this issue at the trial level, because at

that point the cases upon which he now relies, *Penry* and *Apprendi*, had not been decided.  The Court

disagrees.  If the issue of the burden of proof for mitigating circumstances was unavailable because

the cases upon which it is based had not yet been decided, Oliver could perhaps argue that the novelty

of the issue excused his failure to raise it.  *See Reed v. Ross,* 468 U.S. 1, 15-16 (1984).  In the present

14

case, however, Oliver was well aware of the issue, as shown by his filing the motion for leave to *voir dire* jurors on the burden of proof. Because Oliver provides no explanation for withdrawing the motions, and then failing to re-file it, the Court finds that he has not established good cause for failing to preserve the issue for appeal. Because the Court is precluded from reviewing the merits of this claim, it will grant the Director's motion for summary judgment.

13. Oliver's thirteenth claim is that the petitioner's right to an impartial jury under U.S. CONST. amend. VI was denied when jurors consulted Biblical scripture which called for death as the punishment for murder. The Court concludes that further review of this issue is needed and therefore, at this time, summary judgment will be denied.

14. Oliver's fourteenth claim is that the Petitioner's right to a punishment determination based upon discretion carefully guided by law, under U.S. CONST. amend. VIII , was denied when jurors consulted Biblical scripture which called for death as the punishment for murder. The Court concludes that further review of this issue is needed and therefore, at this time, summary judgment will be denied.

15. Oliver's fifteenth claim is that the trial court's refusal to instruct the jury that Oliver would not be eligible for parole for 40 years if he were given a life sentence subjected him to cruel and unusual punishment. The state court overruled his claim on the grounds that it had been inadequately briefed, in violation of Tex. R. App. P. 38.1. The Director contends that the claim is procedurally defaulted for this reason. It is not clear that Rule 38.1 has been so consistently applied as to constitute an adequate and independent state ground for decision, the Court finds that the issue has not been procedurally defaulted. Accordingly, the Court will review the claim *de novo*.

Oliver contends that although the Texas law in effect at the time of his trial prohibited informing the jury of the amount of time he would have to serve before becoming eligible for parole if he were sentenced to life imprisonment, the law was amended shortly afterwards to remove that prohibition.    Oliver argues that the pre-amendment procedure constituted cruel and unusual punishment.

What constitutes "cruel and unusual punishment" changes in light of "the evolving standards of decency that mark the progress of a maturing society." *See Trop v. Dulles,* 356 U.S. 86, 101 (1958). Assuming *arguendo* that the procedural question of whether jurors should be told that a capital defendant would not be eligible for parole for 40 years if he is sentenced to life imprisonment is even appropriately analyzed in this context, the evidence Oliver cites for an emerging national consensus on this question - the fact that the Texas Legislature amended the procedure after his trial, and both the New Mexico Supreme Court and a minority of justices on the Supreme Court of the United States have criticized the old procedure - falls well short of what is required to carry his burden of proof. *See Atkins v. Virginia,* 536 U.S. 304, 312 (2002). The Court will grant the Director's motion for summary judgment as to this claim.

16.  Oliver's sixteenth claim is that the trial court's refusal to instruct the jury that he would not be eligible for parole for 40 years if he were given a life sentence denied him due process of law. Because this claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of law, the question for the Court is whether the state court's adjudication of the claim was contrary to, or based an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In *Simmons v. North Carolina*, 512 U.S. 154 (1994), the Supreme Court of the United States held that juries in capital cases must be informed that a defendant who is given a life sentence will be ineligible for parole. In *dictum*, however, Justice O'Connor stated that this rule only applied to states whose punishment regimes included only life without the possibility of parole, and that jurors need not be informed of the length of time a defendant must serve before becoming eligible for parole in states in which life sentences carried the possibility of parole. Because at the time of his trial Texas law provided for life with the possibility of parole, Oliver concedes that the state court's rejection of his claim is neither contrary to, nor the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Simmons*. The Court will grant the Director's motion for summary judgment as to this claim.

17. Oliver's seventeenth claim is that the trial court's failure to instruct the jury that a less than unanimous vote on the special punishment issue would result in a life sentence, rather than a mistrial, denied Oliver the heightened reliability required in the adjudication of capital cases. Because this claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of law, the question for the Court is whether the state court's adjudication of the claim was contrary to, or based an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

The Supreme Court has repeatedly held that it is constitutionally impermissible to rest a death sentence on a determination made by jurors who have been misled about either their role in or their responsibility for determining the appropriateness of the defendant's death. *See Romano v. Oklahoma*, 512 U.S. 1 (1994); *Caldwell v. Mississippi*, 472 U.S. 320, 328-29 (1985). Oliver contends that the jurors in his case were also misled, in that they were not informed that failure to reach a unanimous

17

opinion as to the likelihood of his future dangerousness would result in his receiving a life sentence, rather than in a mistrial. Oliver argues that a lone juror who believed a life sentence was appropriate would have been more likely to stick by that opinion if he were so informed.

In *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000), the United States Court of Appeals for the Fifth Circuit held, *inter alia*, that the failure to instruct a juror that a less than unanimous vote on the future dangerousness issue would result in a life sentence, rather than a mistrial, was not inconsistent with Supreme Court precedent on the issue. That precedent binds this Court to find that the state court's rejection of Oliver's seventeenth claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The Court will grant the Director's motion for summary judgment as to this claim.

18. Oliver's eighteenth claim is that the trial court's failure to instruct the jury that a less than unanimous vote on the special punishment issue would result in a life sentence denied Oliver the right to a fair trial. Because this claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of law, the question for the Court is whether the state court's adjudication of the claim was contrary to, or based an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Oliver cites no Supreme Court precedent supporting the proposition that the Sixth Amendment requires that jurors in a capital case be informed of the consequences of a less than unanimous vote as to one of the punishment issues. As a result, he provides no basis for this Court to determine whether the state court's rejection of his claim is contrary to, or the result of an unreasonable application of, clearly established federal law. The Court will therefore grant the Director's motion for summary judgment as to this claim.

18

19. Oliver's nineteenth claim is that the trial court's failure to instruct the jury that a less than unanimous vote on the special punishment issue would result in a life sentence denied him due process of law. Because this claim was rejected on the merits by the state court on post-conviction review, and involves a pure question of law, the question for the Court is whether the state court's adjudication of the claim was contrary to, or based an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Oliver makes the same argument on this due process claim that he made on his cruel and unusual punishment claim - jurors must be informed that failure to reach a unanimous opinion as to the likelihood of his future dangerousness would result in a capital murder defendant receiving a life sentence, rather than in a mistrial. The Court rejects this argument now for the same reason it rejected it then - because it is foreclosed by Fifth Circuit precedent. *See Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000). The Court will therefore grant the Director's motion for summary judgment as to this claim.

20. Oliver's twentieth and final claim is that his trial counsel rendered ineffective assistance by failing to investigate mitigating evidence that could have been offered at the punishment-determination phase of his trial. This claim was never presented to the state court. 28 U.S.C. § 2254 (b) generally prohibits granting relief on claims not previously presented to the state courts, so the first issue for the Court is whether to allow Oliver to return to state court and present the claim in a successive petition, or to treat the claim as if it has been procedurally defaulted. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The decision turns on whether the Court believes there is a chance that the State court would consider the merits of the claim if Oliver raised it in that forum. *See Wilder v. Cockrell,* 274 F.3d 255, 262-63 (5th Cir. 2001).

19

Tex. Code Crim. P. art. 11.071 § 5 provides that if a subsequent petition for state post-conviction review is filed after an inmate files an initial application, a state court may not consider the merits of or grant relief based upon the subsequent application unless the application contains specific facts establishing that:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the State's favor one or more of the special issues that were submitted to the jury in the applicant's trial under article 37.071 or 37.0711.

Oliver does not contend that he can establish any of these three elements, so the Court finds that the state court would refuse to address the merits of this claim were Oliver to present it to the state courts at this time. Accordingly, the Court will treat this claim as if it were procedurally defaulted.

Federal courts will not review procedurally defaulted claims unless the applicant can establish either that he had good cause for failing to present his claims, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the Court's failing to address the claims would result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 749-750 (1991). Oliver contends that he had good cause for failing to raise his ineffective assistance of trial counsel claim in his original petition for post-conviction relief, because at the time the post-conviction relief petition was due he was still being represented by trial counsel on direct appeal, and

20

"[i]t is awkward, to say the least, for a petitioner to take the position in a sworn affidavit that the lawyer representing him on appeal is ineffective."

The Court agrees that being represented on direct appeal by the same attorney that the client, in post-conviction proceedings, is accusing of rendering ineffective assistance at the trial level can be awkward. Considering the interests at stake in a capital case and the ethical obligations of counsel, however, the Court does not presume that mere awkwardness would prevent Oliver's post-conviction counsel from timely asserting an ineffective assistance of trial counsel claim if it truly had merit.[2] The Court therefore finds that Oliver has not established good cause for failing to raise his ineffective assistance of trial counsel claim in state court. Because the Court treats this claim as if it were procedurally defaulted, the Court will grant the Director's motion for summary judgment as to Oliver's twentieth claim.

## VI. Conclusion

Oliver's first, second and third claims are not cognizable in federal *habeas corpus*. The state court's rejection of his fourth, ninth, tenth, eleventh, sixteenth, seventeenth, eighteenth and nineteenth claims was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The state court's rejection of his fifth, sixth, seventh, and eighth claims was not unreasonable in light of the evidence presented to the state court. Oliver's twelfth and twentieth claims were procedurally defaulted, and he did not raise a genuine issue of fact as to an essential element of his fifteenth claim. For these reasons, the Court will grant the Director's motion for summary judgment as to these eighteen of the twenty claims in Oliver's

---

[2] The Court also notes that either appellate counsel or Oliver could have requested that Oliver receive new counsel for his appeal.

application.   However, the Court concludes that further review of claims thirteen and fourteen is warranted and summary judgment will be denied, subject to further review.   There is no need for the partes to submit further briefing or evidence as to these issues, unless directed to do so by the court.

It is therefore **ORDERED** that Respondent's motion for summary judgment is **GRANTED** as to the following numbered claims presented by Petitioner: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20.   Respondent's motion is **DENIED** as to the claims numbered 13, and 14, subject to further review by the court.

SIGNED this 29th day of September, 2005

Ron Clark, United States District Judge