**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **KHRISTIAN OLIVER,** | § | |
| Petitioner, | § | |
| vs. | | No. 1:04cv041 |
| | § | |
| **DOUG DRETKE, Director,** | | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | | |
| | § | |
| Respondent. | | |

**SECOND MEMORANDUM OPINION**

Khristian Oliver ("Oliver"), an inmate confined to the Texas Department of Criminal Justice, Institutional Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Oliver challenged his capital murder conviction and death sentence imposed by the 145th Judicial District Court of Nagcodoches County, Texas in cause No. 27,037, styled *The State of Texas vs. Khristian Oliver.* Respondent Doug Dretke ("the Director") has filed a motion for summary judgment. The court earlier granted judgment as to Petitioner's claims 1-20, reserving ruling on 13 and 14. For the reasons set forth below, judgment will be granted as to Petitioner's remaining claims, numbers 13 and 14.

**I.  Background Facts**

Oliver began a crime spree about a year and half before the incident which resulted in his conviction in this case.  There were over a dozen burglaries and many of them involved the use of weapons.  On March 17, 1998, Oliver, his girlfriend Sonya Reed, Bennie Rubalcaba (age 16) and his brother, Lonny Rubalcaba (age 15), stopped at the house of the victim, Joe Collins, in rural

1

Nagcodoches County.  Oliver and Lonny Rubalcaba went to burglarize the house, carrying Oliver's .380 caliber pistol, a handful of bullets and bolt cutters.  Reed and Bennie Rubalcaba stayed in the truck.  While the two were in the house, Collins came home.  Collins shot Lonny Rubalcaba in the leg as he and Oliver were trying to escape.  Oliver then shot Collins five times.  At least two of the shots were fired while the victim lay on his back on the ground outside his house. As Bennie Rubalcaba helped his brother Lonny back to the truck he turned and saw Oliver striking Collins several times in the head with a rifle butt, while Collins was lying on the ground.  Collins's skull was severely fractured and his face was disfigured nearly beyond recognition.

Oliver then joined the group in the truck.  The group took Lonny Rubalcaba to the hospital and went to the Sheriff's office and filed reports saying that someone had driven by and shot Lonny while they were all at a farm.  The next day, deputies picked up Bennie Rubalcaba and questioned him.  Bennie then gave a written statement admitting what had actually happened.  That same morning, police questioned Lonny Rubalcaba, who, after originally repeating the story about the farm, gave a second written statement coinciding with his brother's second statement. Police located Oliver and Reed at a Houston motel and arrested them.

## II.  Procedural history

Oliver was indicted for capital murder, the killing of Collins having taken place during the commission of a burglary.  He was tried and found guilty in April 1999, and after a punishment determination hearing, he was sentenced to death.  His conviction and sentence were affirmed on direct appeal by  the Texas Court of Criminal Appeals, *Oliver v. State*, No. 73,837, slip op. (Tex. Crim. App. April 17, 2002) (unpublished).  The Supreme Court of the United States denied his petition for a writ of *certiorari.  Oliver v. Texas*, 537 U.S. 1161 (2003).  His petition for post

2

conviction relief was denied by the Court of Criminal Appeals on October 20, 2002, and his petition

for a writ of *certiorari* was also denied.  *Oliver v. Texas*, 538 U.S. 1001 (2003).

On January 21, 2004, Oliver filed the present application for a writ of *habeas corpus*.  On

October 14, 2004, the Director moved for summary judgment as to all of the claims in the petition.

## III.  Claims

All claims except numbers 13 and 14 were disposed of by the court's previous order.  Claims

13 and 14 state:

> 13. The petitioner's right to an impartial jury under U.S. CONST. amend.  VI was denied
> when jurors consulted Biblical scripture which called for death as the punishment for
> murder.

> 14. The Petitioner's right to a punishment determination based upon discretion carefully
> guided by law, under U.S. CONST. amend. VIII , was denied when jurors consulted Biblical
> scripture which called for death as the punishment for murder.

## IV.  Standard of review

28 U.S.C. § 2254 (d) provides that relief in *habeas corpus* may not be granted with respect

to any claim which was adjudicated on the merits in State court proceedings unless the adjudication

of the claim resulted in a decision that was either (1) contrary to, or an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States, or (2)

based upon an unreasonable determination of the facts in light of the evidence presented in the State

court proceedings.  Pure questions of law and mixed questions of law and fact are reviewed under

§ 2254 (d)(1), while pure questions of fact are reviewed under § 2254 (d)(2).  *Moore v. Johnson*, 225

F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001).  Claims fairly presented to the state

courts but not adjudicated on the merits are reviewed *de novo.*

28 U.S.C. §2254 (b) generally prohibits granting relief on claims not previously presented to the state courts.  If a federal application contains any such claims, the Court will attempt to allow the applicant to return to state court and present them to the state court in a successive petition, either by dismissing the entire petition without prejudice, *see Rose v. Lundy*, 455 U.S. 509, 520-22 (1982), or by staying the federal proceedings on the exhausted claims.  *See Rhines v. Weber*, ---U.S.----, 125 S. Ct. 1528, 1534 (2005).

If the federal court is convinced that the state court would refuse to consider the merits of such a successive petition, however, the federal court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds.  *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).  The Court does not review such procedurally defaulted claims unless the applicant can establish either that he had good cause for failing to fairly present his claims, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the Court's failing to address the claims would result in a fundamental miscarriage of justice.  *See Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001).  If it is not entirely clear that the state court would refuse to hear a successive petition containing the new claims, the federal court will allow the state court the first opportunity to consider them.  *See Wilder v. Cockrell,* 274 F.3d 255, 262-63 (5th Cir. 2001).

## V.  Analysis

Oliver's thirteenth claim is that the jurors consulted the Bible during the punishment-determination phase of deliberations, which denied him a fair and impartial jury.  Because this claim was denied on the merits by the state court on direct appeal, and involves a pure question of fact, the question for this Court would normally be whether the state court's adjudication of the claim was

based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Oliver originally raised this issue by post-trial motion, and the trial court conducted an evidentiary hearing. The Motion for New Trial transcript shows that Oliver's attorney, Mike DeGeurin, Esq., spoke with all twelve jurors on the telephone before the evidentiary hearing. Oliver and his attorney called four jurors to testify at the hearing. The State opposed this testimony, but the Judge overruled the State's objection and let the jurors testify as to facts surrounding the Bible in the jury room. Based upon their testimony, the trial court denied Oliver's motion and made the following finding:

> And then the ruling of this Court is, that having heard all the evidence pertaining to the occurrence in the jury room in question in reference to the Biblical quotation which is on file in the case, it is the Judgment of this Court that the conduct of the jury was not improper. And that a conscientious, dedicated and caring jury considered this case in accord with the Court's Charge and the instructions of the Court and rendered their verdict in accord with the evidence they heard in this case uninfluenced by any outside influence of any kind shown to the Court in this hearing." The Texas Court of Criminal Appeals reviewed the transcript of the new trial motion and affirmed, determining that the jurors' deliberations were not influenced by their reading the Bible.

Oliver contends that the *habeas* standard of review should not apply, because he has newly discovered evidence. Oliver alleges that a different juror had told a foreign journalist that the jurors did discuss the Bible during deliberations. Oliver tried, unsuccessfully, to raise this claim, with this

new evidence, in his state post-conviction proceedings.  The state court denied Oliver's request to consider his newly discovered evidence or conduct another evidentiary hearing on July 25, 2002. Oliver objected to the denial of another evidentiary hearing and he now asks the federal court to conduct an evidentiary hearing and receive this evidence, and then determine whether the state court's ultimate finding that the Bible was not an outside influence, was reasonable in light of all the evidence, not just the evidence considered by the state court.

28 U.S.C. § 2254 (e)(2) provides, in relevant part, that an applicant may obtain an evidentiary hearing if the factual predicate of his claim could not have been previously discovered through the exercise of due diligence, and the facts underlying the claim would be sufficient to establish, by clear and convincing evidence, that but for constitutional error, no reasonable fact finder would have sentenced him to death.

Assuming *arguendo* that Oliver could not through due diligence have discovered the testimony of the other juror in time to timely present it to the state court, his request still must be denied because he has not even alleged, let alone established, that but for relying on the Bible, no reasonable juror would have answered the special issues in the way that resulted in his receiving a death sentence.  The Court will deny Oliver's request for an evidentiary hearing on this claim.  *See Guidry v. Dretke*, 397 F.3d 306, 327 (5th Cir. 2005).  The Court in *Guidry* affirmed the District Court's decision to conduct an evidentiary hearing because the written findings of the state court omitted crucial testimony.  *Id.*  Unlike the case of *Guidry*, the testimony presented at Oliver's hearing on his Motion for New Trial was not inconsistent.  A habeas petitioner can not discredit state court findings on credibility simply because the findings are not explicit.  *Id.*  In addition, Oliver has not provided this court with sworn testimony from the juror or journalist stating what actually was

6

stated in the jury room.  The Court recognizes that the state court findings were sparse, but, as previously stated, the jurors' testimony at the hearing was not inconsistent.

Because the Court will not receive new evidence on this claim, and because Oliver does not dispute that the state court's rejection of his claim, in light of the evidence presented in the state court proceedings, the Court will grant the Director's motion for summary judgment as to Oliver's thirteenth claim.

Oliver's fourteenth claim is that because the jurors consulted the Bible during the punishment-determination phase of the deliberations, Oliver was denied the right to a punishment determination based upon discretion carefully guided by law.  Because this claim was denied on the merits by the state court on direct appeal, and involves a pure question of fact, the question for the Court is whether the state court's adjudication of the claim was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

As stated earlier, Petitioner's attorney talked to all twelve jurors, but only four testified at the hearing.  Oliver and his attorney had the authority to call all twelve jurors and there is no evidence that the Judge only allowed four to be called, or limited in any way Oliver's ability to call all twelve.  It was the decision of Oliver and his attorney to call only four and that evidence is what the trial court had before it when it made its decision.  Oliver can not now say a juror has changed his mind or would give a different answer.  Even if that was permitted, Oliver has provided no documentation to support the proposition, such as an affidavit from the juror, or even an unauthenticated letter from the juror.  The only piece of "evidence" offered by Oliver is an unsworn "transcript" of what an unsworn journalist allegedly claims a juror said.  That is simply not enough to meet Oliver's burden of proof.

The analysis of this claim is similar to that of his thirteenth claim, and for the reasons stated above, which are applicable here and because Oliver takes no other issue with the state court's adjudication of this claim and because Oliver has not met his burden of proof the Court will grant the Director's motion for summary judgment as to the fourteenth claim and deny Oliver's request for an evidentiary hearing.

**VI.  Conclusion**

The state court's rejection of his thirteenth and fourteenth claims was not unreasonable in light of the evidence presented to the state court.  For the reasons stated, the Court will grant the Director's motion for summary judgment as to both of these claims.  All claims having now been disposed of, a final judgment as to all claims will be entered.

So **ORDERED** and **SIGNED** this **9**   day of **November, 2005.**

_____
 Ron Clark, United States District Judge